William CHANDLER,
Movant–Appellant,

v.

STATE of Missouri, Respondent.

No. 14950.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 11, 1988.

Gregg T. Hyder, Columbia, for movant-appellant.

William L. Webster, Atty. Gen., Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for respondent.

GREENE, Judge.

William Chandler appeals from a circuit court judgment denying relief on his motion for post-conviction relief. After entering guilty pleas, Chandler had been sentenced to life imprisonment for first degree murder and first degree robbery and five years' imprisonment for kidnapping. We affirm.

At his guilty plea hearing, Chandler related to the trial court the following facts concerning the kidnapping and killing of Jimmy Jones. On May 23, 1982, Danny Jimmerson and Chandler, accompanied by Sherill James, drove to the Ridgeview Min-Mart in Scott County, Missouri. Chandler and Jimmerson had earlier discussed robbing the proprietor of the convenience store and had decided they would kill any witnesses. Chandler went into the store first, followed by Jimmerson. Jimmerson "pulled a weapon (a .22 caliber revolver) on Mr. Jimmy Jones, and we took him out to the car." They then drove to a nearby field, where Jones was told to lie face down on the ground. When he did so, he was shot in the back of the head by Jimmerson.

Following the killing, Chandler was arrested, and admitted to local authorities that he helped plan the robbery, and that he received $100 as his share of the money obtained in the robbery. Chandler was then charged with capital murder, first degree robbery, kidnapping and armed criminal action. After plea bargaining negotiations between the prosecuting attorney and Chandler's attorney, the capital murder charge against Chandler was reduced to first degree murder. Chandler, as his part of the agreement, agreed to testify against Jimmerson, who had entered pleas of not guilty to the criminal charges. Also, pending armed criminal action, forgery, and receiving stolen property charges against Chandler were dismissed as a part of the plea bargain. Chandler then entered his guilty pleas to first degree murder, first degree robbery, and kidnapping, and received the sentences challenged here.

After Chandler was confined to serve his sentences, he filed a motion to vacate his sentences and set aside his guilty pleas.

The motion, after amendment, claimed that ineffective assistance of legal counsel prior to the time Chandler entered his guilty pleas caused those pleas to lack the element of voluntariness required by law. Specifically, Chandler claimed that his first attorney, Scott Walter, who Chandler asserted had a conflict of interest because he was also representing co-defendant Jimmerson, failed to advise him of his right to remain silent, and as a result of such failure, Chandler made incriminating statements, which formed the basis of his prosecution, to Scott County law enforcement officers. He also alleged that his second attorney, Gary Robbins, was ineffective for failing to move to suppress the incriminating statements, which Chandler said he made after his illegal warrantless arrest, and that Robbins had failed to properly investigate the facts of the case. Chandler also contended that his guilty pleas were induced by the state's promise to let him serve his sentences out of state, to protect him from retaliation by Jimmerson, which promise was not kept.

An evidentiary hearing was held, after which the hearing court made findings of fact and conclusions of law, the relevant portions of which are as follows:

(1) Chandler was legally arrested because of a warrant outstanding against him on a receiving stolen property charge.

(2) Prior to the time Scott Walter spoke with Chandler about these crimes, Walter was told by the sheriff of Scott County that Chandler had given statements to authorities implicating himself in the crimes in question. As soon as Walter spoke with Jimmerson and recognized his conflict, "he properly advised all concerned" of the conflict in interest, and proper procedures were followed to insure Chandler's legal representation, which representation was then provided by Gary Robbins.

(3) Gary Robbins properly investigated all facts concerning the underlying crimes, and had properly advised Chandler concerning his constitutional rights prior to Chandler's entry of the guilty pleas.

(4) Chandler was not induced to enter his guilty pleas because of the prosecutor's

agreement that he would attempt to persuade the Department of Corrections, presumably through an interstate compact, to let Chandler serve his time in another state.

(5) The evidence established that it was Chandler who insisted he be housed in Jefferson City, as opposed to another location.

Based on these findings and conclusions, the hearing court denied the motion to vacate.

██ On appeal, Chandler contests all of these findings and conclusions on the basis that they are not supported by the record. Our review is limited to a determination of whether the findings, conclusions, and judgment of the hearing court are clearly erroneous. Rule 27.26(j).[1] Chandler had the burden of establishing his grounds for relief by a preponderance of the evidence. Rule 27.26(f). By entering guilty pleas to the murder, robbery, and kidnapping charges, the issue of ineffective assistance of counsel is material only as to how such assistance affected the voluntariness of Chandler's pleas. *Pool v. State,* 670 S.W.2d 210, 212 (Mo.App.1984).

██ The record fails to disclose any omission of professional duty on the part of either of Chandler's trial attorneys. Chandler had already admitted criminal complicity prior to the time Walter met with him. As soon as Walter became aware that he would have a conflict of interest by representing both Chandler and Jimmerson, he promptly advised Chandler, and proper procedures were followed to insure Chandler's representation by competent counsel. There is nothing in the record to show Chandler was prejudiced in any way by the advice given him by attorney Walter, or by Walter's subsequent representation of Jimmerson.

After Robbins entered the case, he advised Chandler of his rights, including the right to a jury trial. Chandler, however, wanted a plea bargain agreement in order to soften the blow, so to speak, that would ensue from a capital murder conviction. The fact that Robbins was able to effectu-ate such an agreement, and to secure dismissal of other felony charges against Chandler, after evaluation of the evidence against his client, including the fact that Chandler had already given written and video taped statements admitting his guilt prior to the time Robbins entered the case, is a tribute to Robbins' effectiveness, not the reverse.

There is nothing in the record to indicate that the agreement by the prosecutor that he would try to persuade Department of Corrections officials to let Chandler, under an interstate compact, serve his sentences in another state, induced him to plead guilty. The record indicates the prosecutor kept his word, but that while negotiations aimed at that result were being conducted, Chandler requested that he be moved from the Scott County jail and placed in the custody of the Missouri Department of Corrections.

At the guilty plea hearing on the murder charge, an exchange between the trial judge and Chandler, who was under oath, is quite revealing. It went as follows:

Q. Has Mr. Robbins been your attorney since this matter began?

A. No, sir.

Q. Who was your attorney before Mr. Robbins?

A. Scott Walter.

Q. There was a conflict; was not there?

MR. ROBBINS: That's correct, Your Honor, but I took the case over.

Q. [By the Court] Do you understand the reason Mr. Walter did not continue to represent you? Has that been explained to you?

A. Yes, sir.

Q. There was a conflict there. Are you satisfied with Mr. Walter's representation of you?

A. Yes, sir.

Q. Did he do everything that you felt he should do?

A. Yes, sir.

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R.

Q. Did you give him all the facts that give rise to these charges and sit down and him counsel with you on the law and talk to you about those things?

A. No, sir.

Q. Did you discuss the case with him?

A. Not all of it.

Q. There was a conflict that he declared in the Court. That may have been why he didn't discuss those things with you. He represented someone else, I believe, in this very same case.

A. Yes, sir.

Q. He may not have wanted to know your position. That probably was the case. Then you were transferred to Mr. Robbins?

A. Yes, sir.

Q. Have you had an opportunity to sit down with Mr. Robbins and give him all the facts that give rise to these charges?

A. Yes, sir.

Q. You haven't withheld any information from him?

A. No, sir.

Q. Is there anything you would like to tell him that maybe you have forgotten and would like to tell him now?

A. No, sir.

Q. Are you satisfied with his work?

A. Yes, sir.

Q. Do you understand that if you have any complaints concerning your representation, the way the attorney represented you, now is the proper time to tell about that? Do you understand that?

A. Yes, sir.

Q. Has Mr. Robbins done everything you have asked him to do?

A. Yes, sir.

Q. Is there anything you want him to do now that he has not done?

A. No, sir.

Q. He has advised you of your rights, the law, to your satisfaction?

A. Yes, sir.

Q. Did he check your witnesses and check your story and do all the leg work that you asked him to do?

A. Yes, sir.

Q. Do you feel like he shorted you in any way, shape or form in your representation?

A. No, sir.

Q. You are telling me that you [are] satisfied with his work?

A. Yes, sir.

Chandler sought to blunt the impact of his statements to the trial judge made at the time of his guilty plea hearing by testifying at the evidentiary hearing that attorney Robbins told him to lie concerning the facts of the robbery, kidnapping, and murder. The hearing court, after observing that Chandler had admitted under oath that he had lied under oath on two prior occasions, concluded Chandler was not a credible witness. This conclusion is not surprising under the circumstances, and is supported by the record.

The findings, conclusions and judgment of the motion court are supported by the record and are not clearly erroneous.

Chandler produced no credible evidence at the evidentiary hearing that would justify vacating his guilty pleas and ensuing sentences.

Judgment affirmed.

CROW, C.J., and HOLSTEIN, J., concur.